UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT


CIVIL ACTION NO. 09-27-GWU


CYNTHIA J. ERICKSON,                                          PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


## INTRODUCTION

Cynthia Erickson brought this action to obtain judicial review of an unfavorable administrative decision on her applications for Disability Insurance Income and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3.  The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Erickson, a 55-year-old former radiologist technologist, data entry operator, receptionist, accounts payable clerk and legal secretary with a high school education, suffered from impairments related to tremors, back pain, bilateral carpal tunnel syndrome and depression.  (Tr. 17, 20-21).  While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of medium level work.  (Tr. 19-20).   Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 21-22).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 21).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence.  However, the current record also does not mandate an immediate award of Social Security benefits.  Therefore, the court must grant the plaintiff's summary judgment motion in so far as it seeks a remand of the action for further consideration and deny that of the defendant.

The hypothetical question presented to Vocational Expert Jackie Rogers included an exertional limitation to medium level work, restricted from a full range

by such non-exertional restrictions as (1) an inability to more than occasionally perform fine manipulation; (2) a limitation to routine, simple tasks and instructions; (3) an ability to concentrate and maintain attention for two-hour segments over an eight-hour day; (4) an ability to respond appropriately to supervisors and co-workers as well as avoid hazards and adapt to simple changes in a task-oriented environment where contact with others was casual and infrequent.  (Tr. 32).  In response, Rogers identified a significant number of other jobs which could still be performed.  (Tr. 33).  The ALJ relied upon this information to support the denial decision.  (Tr. 21).

Erickson argues that the hypothetical factors did not fairly characterize her condition as required by Varley.  She asserts error with the ALJ's handling of the evidence with regard to both her mental and physical condition.

With regard to Erickson's mental status, the plaintiff notes that the record was reviewed by Psychologists Jane Brake and Laura Cutler, each of whom indicated that she would be "moderately" limited in such areas as (1) maintaining attention and concentration for extended time periods, (2) working in coordination with or proximity to others without being distracted by them, (3) completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable length and number of rest periods, (4) interacting appropriately with the general public, and (5) responding appropriately to changes in the work setting.  (Tr. 257-258, 310-311).

8

These restrictions were more severe than those found by the ALJ and presented to the vocational expert, particularly the limitation concerning completing a normal workday and workweek, which was not mentioned.  These limitations were noted in the Section I "Summary Conclusions" portion of the Mental Residual Functional Capacity Assessment Form completed by each of the reviewers.  The plaintiff asserts that the ALJ erred in failing to present all of these limitations to the vocational expert.  Since the hypothetical question did not fairly depict her mental status, the ALJ did not meet his burden of proving that a significant number of jobs could still be performed, and, so, a remand of the action is required.

The defendant asserts that the restrictions contained in Section I were not intended as the residual functional capacity finding.  The reviewers also each completed the Section III portion of the form, captioned "Functional Capacity Assessment," upon which the claimant was noted to be able to understand and recall simple material, sustain concentration and persistence at simple tasks for two-hour segments, function in an object-focused setting requiring little public contact, and adapt to routine changes.  (Tr. 259, 312). The defendant asserts that the hypothetical question was essentially consistent with these limitations.[1]   The defendant argues that the restrictions contained in Section III are the only ones

---

[1] The court notes that the hypothetical question omitted the restriction to object-focused environments identified by the reviewers.

9

which count as the limitations found by the reviewer and that those contained in Section I are irrelevant.

The Sixth Circuit Court of Appeals recently declined to reach the issue concerning whether the more specific restrictions of Section I or the limitations noted in Section III apply when there is an apparent discrepancy between the two sections since the hypothetical factors failed to include all of the mental restrictions identified in either section.  Ealy v. Commissioner of Social Security, 594 F.3d 504, 516 (6th Cir. 2010).  Thus, the undersigned will continue his longstanding practice on the issue.  See, e.g., Woods v. Barnhart, No. 6:04-325-GWU (E.D. Ky. May 18, 2005).  This practice is based on the instructions contained on the Mental Residual Functional Capacity Assessment Form itself.

The instructions for Section I state that:

This section is for recording summary conclusions derived from the evidence in file.  Each mental activity is to be evaluated within the context of the individual's capacity to sustain that activity over a normal workday and workweek, on an ongoing basis.  Detailed explanation of the degree of limitation for each Category (A through D), as well as any other assessment information you deem appropriate, is to be recorded in Section III (Functional Capacity Assessment).

(Tr. 257, 310).  The Instruction for Section III states:

Record the elaborations on the preceding capacities in this section. Complete this section ONLY after the SUMMARY CONCLUSIONS section has been completed.  Explain your summary conclusions in narrative form.  Include any information which clarifies limitation or function.  Be especially careful to explain conclusions that differ from

those of treating medical sources or from the individual's allegations.

(Tr. 259, 312).  Based upon these instructions, Section I appears to contain the actual mental restrictions found by the mental health professional while Section III is intended for more detailed elaboration and clarification of the limitations or "capacities" contained in Section I.  Thus, if a restriction identified in Section I is not mentioned in Section III, the form instructions lead one to the conclusion that the restriction was intended by the reviewer  to stand without need for a more detailed explanation rather than, as the defendant would have one believe, the limitation concerning that area of functioning is irrelevant.  The fact that Section III is to be completed only after Section I suggests that it is intended to be supplementary to Section I rather than to overrule it.  In this interpretation, the two sections work together rather than contradict each other, which to the court makes much more sense.  It would serve no useful purpose to have a mental health professional go to the trouble of identifying a number of restrictions on Section I if these notations are meaningless.  The aforementioned instructions contained on the Assessment Form lead the court to believe that the limitations of Section I are intended to have relevance.  Therefore, the undersigned finds that Section I contains the actual restrictions concerning mental capacity found by the reviewer and Section III provides additional explanation and clarification but does not negate the Section I restrictions.

The defendant also asserts that the ALJ was not required to adopt the opinions of the medical reviewers because they were not binding upon him, citing 20 C.F.R. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I) of the administrative regulations. These sections do indicate that ALJs are not bound by the findings of medical reviewers. However, the administrative regulations also recognize that medical reviewers are "highly qualified physicians and psychologists who are also experts in Social Security Disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I). The regulations further provide that:

> . . . unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii). In the present action, the ALJ failed to explain why the opinions of Brake and Cutler were not fully adopted. (Tr. 15-22). Furthermore, the ALJ actually purported to rely upon the opinions of the medical reviewers. (Tr. 20). In the aforementioned Ealy decision, the Sixth Circuit Court of Appeals found reversible error when the ALJ purported to follow the findings of the medical reviewers but in fact omitted significant mental limitations. Ealy, 594 F.3d at 516-517. Therefore, the court rejects the defendant's argument.

Under these circumstances, the court finds that in the absence of an explanation from the ALJ as to why the opinions of Brake and Cutler were not well

12

supported, the ALJ should have adopted in the restrictions identified by them in their entirety.  In the absence of these restrictions, such as the "moderate" limitation of ability to complete a normal workday and workweek without interruption from psychologically-based symptoms, the hypothetical question did not fairly depict the claimant's condition.  Therefore, the jobs cited by Rogers do not meet the ALJ's burden of proof and, so, a remand of the action for further consideration is required.

Erickson also argues that the physical factors of the hypothetical question did not adequately reflect the restrictions her tremors would impose.  The only limitation imposed by the ALJ relating to this condition  was a restriction to occasional fine manipulation.   This limitation was consistent with the opinions of Dr. Allen Dawson (Tr. 282-289) and Dr. Sudhideb Mukherjee (Tr. 314-321), the non-examining medical reviewers.  Dr. Jules Barefoot, an examining consultant, opined that the plaintiff's tremors would impose a marked impairment of her ability to perform "significantly strenuous activities" and would cause her difficulty with fine manipulation. (Tr. 278).  The ALJ's findings were essentially compatible with these somewhat vague limitations.   Such treating and examining sources as Dr. Joe Hartig (Tr. 237-239), Dr. Thor Tangvold (Tr. 240-255, 322-329), and the staff at the Mission Frankfort Clinic (Tr. 290-292), did not impose more severe, specific functional restriction than those found by the ALJ.  Therefore, the court finds no error with the ALJ's treatment of the evidence relating to the claimant's physical condition.

13

Finally, Erickson also argued that the ALJ failed to cite sufficient reasons for finding that her hearing testimony lacked credibility.  However, the ALJ did identify a number of reasons for this finding, including her demonstrating extreme difficulty with speech at the hearing which was not reflected in other areas of the record, the lack of support in the medical record for her extreme pain complaints, the record revealing she left work due to family deaths and her son's health rather than due to her own health problems, indications in the record that she continued to look for work despite her allegations of total disability, and a 2008 Global Assessment of Functioning rating indicating mild symptoms.  (Tr. 20).  Under these circumstances, the court must reject this particular argument of the plaintiff.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration of Erickson's mental condition.  Therefore, the court must grant the plaintiff's summary judgment motion to this extent and deny that of the defendant.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 10th day of May, 2010.

Signed By:

G. Wix Unthank

United States Senior Judge